**In re Gary E. HEXOM, Debtor.**

**Civ. No. A4–84–81.**

United States District Court,
D. North Dakota,
Northwestern Division.

Dec. 31, 1984.

Phillip D. Armstrong, Minot, N.D., for plaintiff.

Ross H. Espeseth, Bismarck, N.D., for defendant.

## MEMORANDUM AND ORDER

VAN SICKLE, District Judge.

The sole issue in this case is whether the provision under North Dakota law which allows absolute exemption from claims of creditors for the surrender value of a life insurance policy (N.D.Cent.Code § 26–10–17 (Supp.1983)) supersedes a conflicting North Dakota provision that limits the accrued dividends, interest, or cash value of an unmatured life insurance policy to $4,000 (N.D.Cent.Code § 28–22–03.1 (Supp. 1983)).[1]

Since this issue is an issue of law, little factual background is necessary. On January 24, 1984, the bankruptcy court ruled that the cash proceeds of the life insurance policy were not exempt because the policy had been cashed in by the debtor. By a motion to amend the order, the debtor informed the bankruptcy court that the policy had not yet been cashed. The bankruptcy court thereby amended his previous order on February 29th, holding that § 26–10–17 "creates a claim for exemption for a debtor in North Dakota under 11 U.S.C. § 522(d)" for an uncashed policy and that "Section 26–10–17 of the North Dakota Century Code protects life insurance policies from involuntary conversion to cash." The objection to the debtor's claim of exemption was therefore dismissed, and the

1. In the notice of appeal, the appellant listed four issues on appeal. However, the issue listed above is the only one addressed by arguments in the appellant's briefs.

appeal of this dismissal by the trustee followed.[2]

In 1981, the North Dakota legislature enacted § 28–22–03.1 for the purpose of replacing the federal bankruptcy exemptions with the state exemptions. *See* 1981 N.D.Sess.Laws ch. 335; *see also* 11 U.S.C. § 522(b) (Supp. II 1978). According to the legislative history of the statute, the legislature had until January 1, 1983, to enact its own exemptions "in lieu of the federal." According to one of the bill's proponents, "whichever state exemptions are adopted can be amended at a future session. If we don't act, we cannot amend the federal exemptions on a state level." House Industry, Business and Labor Committee Hearing on Sen. Bill No. 2429 (Feb. 16, 1981) (statement of Al Wolf).

The relevant portion of § 28–22–03.1 reads as follows:

In addition to the exemptions provided herein, a resident of the state may select:

.     .     .     .     .

3.  Accrued dividend, interest, or cash value of an unmatured life insurance policy not to exceed four thousand dollars.

In 1983, the North Dakota legislature enacted § 26–10–17, which reads as follows:

The surrender value of any policy of life insurance which, upon the death of the insured, would be payable to the wife, husband, or children or any relative of the insured dependent, or likely to be dependent, upon the insured for support, shall be exempted absolutely from the claims of creditors of the insured. No creditor of the insured, and no court or officer of a court acting for any such creditors, shall have the right under any circumstances to elect for the insured to have such policy of insurance surrendered or in anywise converted into money, and no such policy of life insurance or property right therein belonging to the

holder, and no value thereof, shall be subject to seizure under any process of any court under any circumstance.

1983 N.D.Sess.Laws ch. 172, § 35 (codified at N.D.Cent.Code § 26–10–17 (Supp.1983)).

Appellant's main argument is that § 28–22–03.1 must be applied to this situation because it is more specific than § 26–10–17. In support of this proposition, the appellant quotes a portion (but not the last clause) of N.D.Cent.Code § 1–02–07 (1975), one of the state's rules of construction. The complete text of this statute reads as follows:

Whenever a general provision in a statute shall be in conflict with a special provision in the same or in another statute, the two shall be construed, if possible, so that effect may be given to both provisions, but if the conflict between the two provisions is irreconcilable the special provision shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest legislative intent that such general provision shall prevail.

The 1981 statute (§ 28–22–03.1) is more specific only in its limiting of the insurance to $4,000. Although the legislative history demonstrates that the enactment of the bill was so that its provisions could be applied in bankruptcy proceedings, nothing in the statute limits its application to bankruptcy matters. According to § 28–22–01, the exemptions apply to attachment or mesne processes, levy and sale upon execution, and any other final process issued from any court. Section 28–22–03.1 is therefore not more specific in regards to its application to bankruptcy matters.

But even if the 1981 statute was more specific than the 1983 statute, it is clear from the language of § 26–10–17 that the legislature's manifest intent was to "absolutely exempt from the creditors of the insured" the surrender value of any policy

---

**2.** Although the bankruptcy court did not discuss the conflict between the two statutes, it is clear that he was cognizant of this fact by his quoting of the relevant portions of each statute in his amended order.

It is also apparent that the bankruptcy court, by its decision, ruled that the trustee failed to carry his burden of proof that the exemption was not properly claimed. *See* Bankr. Rule 4003(c).

of life insurance. The statute also states that "no such policy of life insurance or property right therein belong to the holder, and no value thereof, shall be subject to seizure *under any process of any court under any circumstance.*" The state's intention is clear. Section 28–22–03.1 has been superseded by § 26–10–17.

The appellant also argues that a debtor in bankruptcy must select exemptions only from Chapter 28–22, N.D.Cent.Code. Such a construction would negate, in the realm of bankruptcy law, at least eleven other statutory provisions that allow exemptions.[3] But the text of the 1981 act directly contradicts this view:

> In accordance with the provisions of section 522(b) of the Bankruptcy Reform Act of 1978 (Pub.L. 95–589; 92 Stat. 2586; 11 U.S.C. 522(b)), residents of this state shall not be entitled to the federal exemptions provided in section 522(d) of the Bankruptcy Reform Act of 1978. The residents of this state shall be limited to claiming those exemptions *allowable under North Dakota law.*

1981 N.D.Sess.Laws ch. 335 (emphasis added) (codified at N.D.Cent.Code § 28–22–17 (Supp.1983)). Had the legislature intended ch. 28–22 to supersede all other statutory exemptions (in bankruptcy proceedings and otherwise), it would have so stated. Instead, the legislature specifically referred to the exemptions "allowable under North Dakota law."[4] Furthermore, even if the 1981 act had limited exemptions to ch. 28–22, section 26–10–17 would constitute a subsequent modification of ch. 28–22 since, by adopting the 1981 act, the legislature retained its power to alter the exemptions created by that act. *See* 11 U.S.C. § 522(b)(2)(A) (Supp. II 1978); *see also* statement of Al Wolf, quoted *supra* at 325.

Based on the entire file, the order of the bankruptcy court dated February 29, 1984, is AFFIRMED.

---

**3.** *See, e.g.,* N.D.Cent.Code §§ 15–39.1–13 (teacher's retirement annuities and refunds); 18–05–11 (fireman's pensions); 26.1–15–32 (fraternal benefit society payments); 37–25–07 (Vietnam veteran's bonus); 39–03.1–23 (highway patrol retirement payments); 40–45–23 (police pensions); 40–46–22 (municipal employee pensions); 50–09–15 (aid to dependent children); 52–06–30 (unemployment benefits); 54–52–12 (state employee retirement benefits); 65–05–29 (worker's compensation benefits). *See generally* Laurence, *North Dakota's New Rules Respecting Garnishment and the Property Exempt Therefrom,* 58 N.D.L.Rev. 183, 229–34 (1982).

According to Professor Laurence, § 28–22–03.1 applies only to bankruptcy proceedings and creates a bifurcated scheme of exemptions under North Dakota law. *Id.* at 235. Professor Laurence properly points out the problems that such a situation would cause. However, as discussed above, the legislature has not limited N.D.Cent.Code ch. 28–22 to bankruptcy matters. *See also* note 4 *supra* (headings of enactments have no legal significance).

**4.** Only one small aspect of the legislative history of § 28–22–03.1 could be used to support the view that ch. 28–22 constitutes the only exemptions available under North Dakota law. The testimony given in support of Senate Bill No. 2429 from the Independent Community Banks of North Dakota included the following statement:

> We believe that the state exemptions should be adopted, *as they exist under Chapter 28–22* of the North Dakota Century Code. *In addition thereto,* several exemptions contained in the federal list of exemptions should be adopted. Those are [the exemptions listed in the bill].

One person's comment to one of the legislative committees does not constitute legislative intent, especially when the text of the statute which is adopted by the full legislature directly contradicts with the individual's testimony.

The only other means of support for this view is derived from § 28–22–03.1's heading, "Additional Bankruptcy Exemptions." As the appellee points out, under North Dakota law the headings used on statutes have no legal significance. N.D.Cent.Code § 1–02–12 (1975). In addition, the text of chapter 28–22 does not limit its application to bankruptcy matters. *See* N.D. Cent.Code § 28–22–01 (Supp.1983).